STATE OF MINNESOTA

IN SUPREME COURT

A15-1313

Rock County
                   Dietzen, J.
              Took no part, Chutich, J.

Randy Leeroyal Swaney,

      Appellant,

vs.
                   Filed:  July 13, 2016
              Office of Appellate Courts

State of Minnesota,

      Respondent.

————————————

Randy Leeroyal Swaney, Stillwater, Minnesota, pro se.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, Saint Paul, Minnesota; and

Donald R. Klosterbuer, Rock County Attorney, Luverne, Minnesota, for respondent.

————————————

S Y L L A B U S

1.  The postconviction court did not abuse its discretion in denying appellant's claims that were procedurally barred.  In addition, the record of the proceedings conclusively established that he was not entitled to relief on one ineffective-assistance-of-counsel claim.

1

2.	The postconviction court did not abuse its discretion in denying appellant's claims of ineffective assistance of counsel after holding an evidentiary hearing.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

DIETZEN, Justice.

Appellant Randy Leeroyal Swaney was found guilty in August 2008 of three counts of first-degree murder and four counts of second-degree murder for the killing of Carrie Nelson. He was sentenced to life in prison without the possibility of release. We affirmed on direct appeal. *State v. Swaney*, 787 N.W.2d 541 (Minn. 2010). In 2012, Swaney filed a postconviction petition, arguing numerous grounds for relief. The postconviction court denied most of Swaney's claims on the ground that they were procedurally barred. Following an evidentiary hearing, the postconviction court denied Swaney's remaining ineffective-assistance claims. We affirm.

Carrie Nelson, who worked part-time at Blue Mounds State Park in southwest Minnesota, was murdered on the afternoon of May 20, 2001.[1] Nelson, whose body was discovered lying on the park office floor, died due to multiple traumatic injuries to the head. Investigators found a wristwatch with a broken band and a pack of Doral

---

[1]	The facts of this case are set forth in greater detail in our decision on Swaney's direct appeal. *See Swaney*, 787 N.W.2d at 544-49. Accordingly, we will recite only the facts that are relevant to this appeal.

2

100 cigarettes next to her body. Further investigation revealed that roughly $2,000 and two bank bags were missing from the park office safe. Despite intensive efforts to find the person who killed Nelson, including several DNA database searches, no suspects were arrested for nearly 6 years.

In April 2007, Swaney was identified as a suspect in the murder after a BCA forensic scientist again sent a DNA profile taken from the wristwatch to surrounding states, and South Dakota officials identified Swaney as a potential match. The BCA obtained a new DNA sample from Swaney, and matched it to the DNA found on the watch. That same month, investigators interviewed Swaney, who was still incarcerated in South Dakota, and his wife. Swaney and his wife discussed those interviews over the phone on April 20, 2007. During that conversation, Swaney repeatedly told his wife that he had never been to Blue Mounds State Park. On April 25, Swaney wrote a letter to his wife and son, again saying that he had never been to Blue Mounds. But further investigation produced more evidence implicating Swaney, including matching his finger- and palm-prints to prints found at the scene of the crime. In September 2007, Swaney was indicted on seven counts of murder, including three counts of first-degree murder.[2]

---

[2] Specifically, he was indicted for one count each of: first-degree felony murder-kidnapping, Minn. Stat. § 609.185(a)(3) (2014); first-degree premeditated murder, Minn. Stat. § 609.185(a)(1); first-degree felony murder-aggravated robbery, Minn. Stat. § 609.185(a)(3); second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2014); second-degree felony murder-assault in the first degree, Minn. Stat. § 609.19,

(Footnote continued on next page.)

At trial, the State presented evidence that placed Swaney in the park office where the murder occurred. Swaney's DNA was compared to several DNA swabs from the watch found near Nelson's body, and for each swab, Swaney could not be excluded as the DNA's source. One swab from the watch contained a mixture of DNA from two or more individuals; though 99.998% of the population could be excluded as sources of the DNA mixture, Swaney and his wife could not. Investigators also matched Swaney's palm-prints to prints found on the park office counter, and matched his palm-print and fingerprints to those found on a flyer that had been placed on the counter in the office 3 or 4 days before the murder. The State introduced photographs showing Swaney wearing a watch like the one found at the murder scene, and introduced photos and testimony establishing that he commonly smoked the same brand and type of cigarettes found next to Nelson's body. Witnesses testified that, around the time the murder was committed on the morning of May 20, 2001, they saw a white car (identified by one witness as an older Oldsmobile or Monte Carlo) peel out of the park office parking lot. The State established at trial that Swaney and his wife drove a cream-colored 1984 Oldsmobile in 2001.

The State also presented two witnesses who testified that Swaney made inculpatory statements to them. D.I., a fellow inmate of Swaney's in South Dakota,

(Footnote continued from previous page.)
subd. 2(1) (2014); second-degree felony murder-kidnapping, *id*.; and second-degree felony murder-aggravated robbery, *id*.

4

testified that Swaney had told him "they got me this time" and had asked if he knew anything about extradition and the death penalty in Minnesota. M.K., also a South Dakota inmate, testified that after Swaney was visited in prison by police, Swaney had told him the investigators were there in connection with a robbery. M.K. testified that in a later conversation about the robbery, Swaney had told him that a woman had been "smoked in the head." M.K. also testified that Swaney had told him he had committed a crime at Blue Mounds, and that in the course of that crime his watch had fallen off.

Swaney testified that he was innocent and that he had been fishing alone in South Dakota at the time of the murder. He also attempted to explain the presence of his DNA and prints, despite his statements that he had never been to the park, by testifying that "it is possible" that he stopped by the park at some point to inquire about camping, though he did not remember doing so. Swaney also attempted to establish that another man, A.F., was the perpetrator. To do so, Swaney called two witnesses, each of whom testified that A.F. had told them that he had been involved in Nelson's murder. But both witnesses also testified that A.F., who was then in state prison, wanted to avoid a transfer to federal prison. According to one witness, A.F. was afraid of retaliatory gang violence in federal prison.

Following trial, the jury found Swaney guilty of all seven counts, and the district court sentenced him to life in prison without the possibility of release. Swaney filed a direct appeal, and we affirmed. *Swaney*, 787 N.W.2d at 544.

5

Swaney later filed a petition for postconviction relief, alleging numerous trial errors as well as ineffective assistance of trial counsel. The postconviction court denied most of Swaney's claims without holding a hearing, concluding that those claims were procedurally barred because he either had already raised them on direct appeal or should have known about them at the time of his direct appeal. The court concluded, however, that some of his ineffective-assistance claims were not procedurally barred because the trial record alone was not sufficient to review them. The court therefore granted Swaney an evidentiary hearing on whether trial counsel was ineffective: (1) by not obtaining M.K.'s prison phone records; (2) by not personally interviewing witnesses; and (3) due to trial counsel's lack of trial experience. At the hearing, Swaney presented the testimony of only one witness: his lead trial counsel. Following the hearing, the court concluded that Swaney had not carried his burden of proving ineffective assistance of counsel, and denied the petition.

I.

On appeal, Swaney argues that the postconviction court erred by denying his petition for postconviction relief. We review the denial of a petition for postconviction relief, including the petitioner's request for an evidentiary hearing, for an abuse of discretion. *Colbert v. State*, 870 N.W.2d 616, 621 (Minn. 2015). In doing so, we review legal issues de novo and the postconviction court's factual findings for clear error. *Id.* We will not reverse the postconviction court's decision unless the court exercised its discretion in an arbitrary or capricious manner, based its ruling on an error of law, or

6

made clearly erroneous factual findings. *Brown v. State*, 863 N.W.2d 781, 786 (Minn. 2015).

A postconviction court may deny a petition without a hearing if the files and records of the proceedings conclusively establish that the petitioner is not entitled to relief. *Id.*; *see* Minn. Stat. § 590.04, subd. 1 (2014). In making this determination, the court must consider the alleged facts in the light most favorable to the petitioner. *Martin v. State*, 825 N.W.2d 734, 740 (Minn. 2013). But to warrant a hearing, a petitioner's allegations must constitute more than argumentative assertions without factual support. *Doppler v. State*, 771 N.W.2d 867, 871 (Minn. 2009).

### A.

In his petition for postconviction relief, Swaney raised numerous issues, alleging 35 specific claims of trial-court error. The claims he raises on appeal fall into three groups: (1) various claims that the postconviction court determined were procedurally barred; (2) claims of ineffective assistance of counsel that the court determined were procedurally barred; and (3) claims of ineffective assistance of counsel that were denied following an evidentiary hearing.

Swaney argues that the postconviction court abused its discretion when it denied five of his trial-error claims on the ground that they are procedurally barred. Under the *Knaffla* rule, all claims raised in a direct appeal are procedurally barred in a later petition for postconviction relief. *Colbert*, 870 N.W.2d at 626; *see also State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). The *Knaffla* rule also bars all claims

7

that were known or should have been known at the time of the direct appeal.[3] *Colbert*, 870 N.W.2d at 626. We have recognized two exceptions to the *Knaffla* rule.[4] First, a claim is not barred if the claim involves an issue so novel that its legal basis was not reasonably available at the time of the direct appeal. *Quick v. State*, 757 N.W.2d 278, 280 (Minn. 2008). Second, in the interests-of-justice exception, the court may review a claim as fairness requires if the claim has substantive merit and the petitioner did not deliberately and inexcusably fail to raise the issue in a previous proceeding. *Colbert*, 870 N.W.2d at 626.

Swaney alleges that he is entitled to a new trial for five reasons. First, he argues that a recorded telephone conversation between Swaney and his wife was privileged and should have been suppressed in its entirety. Second, he argues that photos entered into evidence at his trial show him wearing a watch with a wristband fastened in a different hole from the watch found near Nelson's body, contradicting the State's argument that the watch found in the park office belonged to him. Third, he argues that the prosecutor committed misconduct by using the phone call with his wife in an improper manner. Fourth, he contends that the jury was "misinformed" because it should have been

---

[3] Minnesota Statutes § 590.01, subd. 1 (2014), provides that "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."

[4] We have not yet decided whether these two exceptions remain applicable to postconviction petitions following the 2005 legislative amendments that added the procedural bar currently found in Minn. Stat. § 590.01, subd. 1. *See Colbert*, 870 N.W.2d at 626 n.9. We need not resolve that question to decide this case.

instructed that it could find him guilty of either first- or second-degree murder, but not both. Fifth, he alleges that the prosecution must have tampered with the watch entered into evidence because its alarm went off at one point during the trial.

Swaney's first claim, which involves the phone call between him and his wife, is *Knaffla*-barred because the claim was already raised and decided on direct appeal. *See Swaney*, 787 N.W.2d at 564; *see also Buckingham v. State*, 799 N.W.2d 229, 232 (Minn. 2011). The remaining four claims are also *Knaffla*-barred because they are based entirely on events that occurred at or before trial, and thus were or should have been known to Swaney at the time of his direct appeal.

Arguing that the *Knaffla* bar should not apply to his second claim, Swaney contends that the photos to which he refers are "new evidence" because, although the photos were entered into evidence at his trial, he didn't have the opportunity to "study" them until after his direct appeal. This contention is meritless. *See Colbert*, 870 N.W.2d at 627 (stating that a "new evidence" argument based on a trial exhibit was meritless because the evidence in question "could have been discovered by examining the exhibit" at the time of the trial).

Swaney also argues that *Knaffla*'s interests-of-justice exception should apply to his first and fifth claims. But that exception cannot apply to his claim that the phone call between him and his wife should have been suppressed, because that claim was already raised and decided on direct appeal. *Brocks v. State*, 753 N.W.2d 672, 675 (Minn. 2008). And Swaney's fifth claim does not satisfy the interests-of-justice exception because

9

Swaney offers no argument as to why his failure to raise this issue in his pro se brief on direct appeal was not deliberate and inexcusable. *See Colbert*, 870 N.W.2d at 626.[5]

In sum, these claims are procedurally barred, and therefore the postconviction court did not abuse its discretion in denying them without granting an evidentiary hearing.

B.

Second, Swaney argues that the postconviction court erred in denying two of his ineffective-assistance claims without granting an evidentiary hearing. The *Knaffla* rule bars claims of ineffective assistance of trial counsel that can be reviewed on the basis of the trial court record. *See Sontoya v. State*, 829 N.W.2d 602, 604 (Minn. 2013). But an ineffective-assistance claim is not *Knaffla*-barred when the claim requires examination of evidence outside the record and additional fact-finding by the postconviction court because it cannot be resolved solely on the basis of the record and the briefs. *Sanchez-Diaz v. State*, 758 N.W.2d 843, 847 (Minn. 2008).

Swaney argues that his counsel was ineffective by failing to use a peremptory strike against a specific juror whom Swaney contends was biased. Though the precise issue of whether his attorney was ineffective by failing to strike the juror has not previously been raised, the issue of whether that juror was actually biased was raised in Swaney's pro se supplemental brief on direct appeal, and we concluded that it lacked

---

[5]     Swaney makes no argument that his third and fourth claims satisfy either *Knaffla* exception.

merit. *See Swaney*, 787 N.W.2d at 564. Further, whether the juror was biased (and therefore whether his attorney was ineffective in not striking her) can in this case be reviewed on the basis of the voir dire record alone. As this ineffective assistance claim was known at the time of Swaney's direct appeal and can be reviewed on the basis of the trial court record alone, it is *Knaffla*-barred.

Swaney argues, however, that the claim is not barred because the novel-legal-basis exception to the *Knaffla* bar applies. The novel legal basis that he asserts is *State v. Fraga*, in which we reversed a conviction after a juror who expressed actual bias and was not rehabilitated was allowed to sit on the jury. 864 N.W.2d 615, 617 (Minn. 2015). But *Fraga* did not establish a novel legal basis unavailable to Swaney on direct appeal. In *Fraga*, we did not overrule any prior case law or announce a new legal theory. We merely applied Minn. R. Crim. P. 26.02, subd. 5, and our juror-bias precedent to the facts of Fraga's case. *See Fraga*, 864 N.W.2d at 623-26. As the legal bases we relied on in *Fraga* were also available at the time of Swaney's direct appeal, this claim does not satisfy the novel-legal-basis exception.

Swaney also contends that his trial counsel was ineffective by failing to obtain a change of venue for his trial. He alleges that the nature of the small community in which the crime occurred and the existence of "several newspaper articles prejudicial to" him ensured that he could not obtain a fair trial in Rock County. Swaney further alleges that he asked his attorney to obtain articles from the local Luverne newspaper to support his change-of-venue motion, and that the "request for a change of venue was denied partially

11

because" of the lack of articles from the local paper. But Swaney does not allege facts which, if proven, would entitle him to relief. *See Doppler*, 771 N.W.2d at 871. Though Swaney argues that his attorney should have included articles from the Luverne newspaper, he does not state what those articles said or how their contents prejudiced his right to an impartial jury.

Swaney argues that the change-of-venue motion was denied partially due to the lack of articles from the Luverne newspaper. The district court, however, did not deny the motion due to the lack of articles from Luverne. Instead, the court denied the motion because the "publicity [surrounding the case], with some minor exception, has been appropriate and not overwhelming," and there was no reasonable likelihood an impartial jury could not be found in Rock County. *See* Minn. R. Crim. P. 25.02, subd. 3 (providing that a motion for change of venue must be granted when "potentially prejudicial material creates a reasonable likelihood that a fair trial cannot be had."). Without supplying any facts regarding specific articles that would undermine the district court's conclusion that the pretrial publicity was not prejudicial, Swaney has not alleged facts that, if proven, would entitle him to relief.

II.

Next, Swaney contends that the district court erred when it denied several of his ineffective-assistance claims after an evidentiary hearing.[6] To prove ineffective assistance of counsel, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Lussier v. State*, 853 N.W.2d 149, 154 (Minn. 2014) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the case. *Strickland*, 466 U.S. at 694. We review ineffective assistance claims with a strong presumption that counsel's performance was reasonable. *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). If a claim fails to satisfy one of the *Strickland* prongs, we need not consider both prongs in determining that the claim fails. *Carridine v. State*, 867 N.W.2d 488, 494 (Minn. 2015).

An attorney's representation meets the objective standard of reasonableness if the attorney exercises the customary skills and diligence that a reasonably competent attorney would exercise under the circumstances. *See Leake v. State*, 737 N.W.2d 531, 536 (Minn. 2007). Strategic choices made by an attorney after a thorough investigation of the facts and law are "virtually unchallengeable." *State v. Nicks*, 831 N.W.2d 493, 508

---

[6] We do not address the State's suggestion that we should abandon our rule that an ineffective-assistance-of-trial-counsel claim is not *Knaffla*-barred when review of the claim requires examination of evidence outside the trial record and additional fact-finding by the postconviction court.

(Minn. 2013) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after a limited investigation of the facts and the law are reasonable "precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690-91).

Reviewing an attorney's choice to limit an investigation requires consideration of all the facts and circumstances of that decision, applying a heavy measure of deference to counsel's judgments. *Id.* at 521-22. For example, even an incomplete investigation constitutes adequate assistance if that investigation is reasonable under the circumstances, or if the attorney has made a reasonable decision that makes further investigation unnecessary. *Strickland*, 466 U.S. at 691. But a failure to investigate a potential defense may constitute ineffective assistance if it results not from counsel's considered choice but rather from inattention or neglect. *See Nicks*, 831 N.W.2d at 506-07; *see also Wood v. Allen*, 558 U.S. 290, 303 n.3 (2010).[7]

---

[7] We note that one of the issues on which the postconviction court granted the evidentiary hearing was the legal experience of Swaney's attorney. An attorney's experience or lack thereof is not a basis on which to conclude the attorney was ineffective. *See Strickland*, 466 U.S. at 688 (directing courts to analyze counsel's *performance* in deciding an ineffective assistance claim); *see also Connick v. Thompson*, 563 U.S. 51, 64-65 (2011) (noting that the presumption of competence applies "even to young and inexperienced lawyers in their first jury trial"). However, an attorney's experience, or lack thereof, "may shed light in an evaluation of [] actual performance." *United States v. Cronic*, 466 U.S. 648, 665 (1984).

In any event, evidence presented at the hearing establishes that Swaney's attorney was very experienced in criminal defense. At the time of Swaney's trial, his lead counsel had been an attorney for 22 years, and had spent the previous 15 years as a criminal defense attorney. During that time, he conducted 97 jury trials. Though this case was his

(Footnote continued on next page.)

Swaney contends that his trial counsel was ineffective because he should have attempted to obtain the prison phone records of M.K., one of the inmates who testified that Swaney had made incriminating statements. He argues that, had those records been obtained, they may have shown that M.K. spoke to people outside the prison about Swaney's case. According to Swaney, such evidence would have shown that M.K. had ways to obtain information about the crime other than from Swaney himself, which would have bolstered Swaney's argument that M.K. was lying.

Swaney has not satisfied his burden of proving that a reasonable probability exists that, had the records been obtained, the result of the trial would have been different. *See Leake v. State*, 767 N.W.2d 5, 10 (Minn. 2009) (deciding an ineffective-assistance claim solely on lack of prejudice because that prong was dispositive). Specifically, Swaney did not produce any evidence or testimony establishing the contents of the phone records in question. Without such evidence, a conclusion that the phone records may have changed the outcome of the trial would be nothing more than speculation. *See Gates v. State*, 398 N.W.2d 558, 563 (Minn. 1987) (stating that it is not proper to reverse a conviction on speculation that an investigation might have found evidence that would have helped the defendant's case).

---

(Footnote continued from previous page.)
first first-degree murder trial, he had previously represented defendants at attempted murder and criminal vehicular homicide trials. Further, he was assisted by two other experienced defense attorneys who had previously conducted murder trials. The record amply demonstrates that Swaney's lead attorney was experienced and assisted by other experienced lawyers.

Moreover, even if the records had shown that M.K. obtained information about the crime from an outside source, they would not have rebutted M.K's testimony that the conversations with Swaney occurred. Instead, the records, at most, would have provided evidence to impeach M.K. on cross-examination. Notably, the State did not rely heavily on M.K.'s testimony at trial, even telling the jury in rebuttal argument that its case was not "built on" M.K.'s credibility.

Swaney's conviction for first-degree murder was also supported by other substantial evidence. *See Francis v. State*, 781 N.W.2d 892, 898 (Minn. 2010) (concluding that petitioner had not shown prejudice because the desired testimony would not have refuted the substantial evidence against him). A watch bearing Swaney's DNA was found next to Nelson's body, as was a pack of cigarettes of a type that Swaney commonly smoked. Photographs entered into evidence established that Swaney wore a watch just like the one found at the scene. His palm-print was found in the park office, and his fingerprints were found on a flyer that was placed in the office just a few days prior to the murder. Eyewitnesses described a car very similar to Swaney's leaving the crime scene, and another prison informant also testified that Swaney made inculpatory statements to him. In sum, even if M.K.'s testimony is discounted, other substantial evidence supports Swaney's conviction. *See Swaney*, 787 N.W.2d at 555-56 (concluding that error was harmless in part because the evidence against Swaney was "strong," without acknowledging M.K.'s testimony as part of that evidence).

16

Swaney next argues that his counsel was ineffective because he did not personally interview witnesses and instead sent a defense investigator to do so. This claim is meritless. Testimony at the evidentiary hearing established that employing an investigator to interview potential witnesses is a common practice among defense attorneys. One reason for this practice is to avoid a situation in which counsel becomes a witness to the interviewed witness' statements, and thereby risks being unable to represent the defendant. *See* Minn. R. Prof. Conduct 3.7. Swaney has not established that having an investigator interview witnesses is objectively unreasonable.

Moreover, Swaney has not alleged any specific facts that would establish prejudice to him from the use of the investigator. Although Swaney has provided a general argument that counsel had a duty to investigate, he has not identified an interview that would have gone differently had it been conducted by an attorney. Moreover, Swaney has not alleged any facts that would show the investigator's performance was deficient.

Swaney further argues that his counsel was ineffective for failing to interview witnesses N.K. and A.F. He alleges counsel should have interviewed N.K.—who is the mother of the murder victim—because N.K. gave a statement to police suggesting that she had seen an individual resembling Swaney at Blue Mounds approximately 10 days prior to the murder. Swaney argues that such testimony would have helped explain the presence of his DNA, fingerprints, and palm-prints in the park office. He also alleges

17

that counsel should have interviewed and called A.F., whom the defense argued was the true perpetrator of the murder.

The record amply demonstrates that, at the very least, counsel's investigation of N.K. and A.F. was reasonable under the circumstances. *See Wiggins*, 539 U.S. at 521. Specifically, counsel examined the statement that N.K. gave to the police before deciding not to call her as a witness. The statement revealed that the probative value of N.K.'s potential testimony[8] was greatly outweighed by the potential danger of calling the victim's mother as an unwilling defense witness.

Further, Swaney's counsel testified that investigators attempted to contact A.F. and that he was "uncooperative with everyone." Counsel considered A.F. to be "too much of a wild card" to present as a witness, and felt that the defense could introduce alternative-perpetrator evidence through other witnesses in a way that obviated the risk that A.F. would contradict that evidence. Under these circumstances, no further investigation of A.F. was reasonably required. Because Swaney's counsel's choice to limit his investigation of N.K. and A.F. as defense witnesses was objectively reasonable,

---

[8]   N.K.'s specific statement to investigators was that when she saw Swaney's photo in the paper 7 years after the murder, "she thought it looked like the same guy [she had seen at the park 10 days prior to Nelson's murder] but could not be sure."

the postconviction court did not abuse its discretion in concluding that Swaney is not entitled to relief.[9]

Because Swaney has not carried his burden to prove ineffective assistance of counsel, the postconviction court did not abuse its discretion in denying his petition following the evidentiary hearing.

Affirmed.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[9] Swaney contests not only his attorney's decision not to interview N.K. and A.F., but also the attorney's decision not to call them to testify. As we have just discussed, counsel conducted a reasonably limited investigation of both of these potential witnesses. Accordingly, counsel's decision not to call N.K. and A.F. to testify was a considered strategic choice, not the product of inattention or neglect. We generally will not review strategic choices counsel made following a reasonable investigation of law and facts, and Swaney has given us no compelling reason to depart from that general rule. *See Carridine*, 867 N.W.2d at 494.