*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0308**

State of Minnesota,
Respondent,

vs.

Michael Adam Davis,
Appellant.

**Filed June 3, 2024
Affirmed
Worke, Judge**

Dodge County District Court
File No. 20-CR-19-245

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Paul J. Kiltinen, Dodge County Attorney, Mantorville, Minnesota (for respondent)

Christa J. Groshek, Aaron J. Roy, Groshek Law, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Gaïtas, Judge; and Kirk, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WORKE**, Judge

Appellant challenges his criminal-sexual-conduct convictions, arguing that (1) the district court erred when it admitted certain evidence, (2) the state's discovery violations require a new trial, (3) he received ineffective assistance of counsel, (4) the state presented insufficient evidence to prove beyond a reasonable doubt that he was in a position of authority, and (5) the district court erred when it calculated his criminal-history score. We affirm.

## FACTS

In March 2019, appellant Michael Adam Davis was stopped by a Dodge County Deputy after being observed operating a vehicle with a juvenile male passenger who was not wearing a seatbelt. When Davis pulled over to the side of the road, D.T. (then 13 years old) moved from "the middle of the front seats where there is no seat" to the passenger seat. The deputy ran the license plate of the vehicle and came across information raising concerns about whether Davis could have contact with a minor. The deputy contacted D.T.'s mother and shared his concerns about D.T. being with Davis. Davis led a young-men's group that D.T. participated in at the church that D.T.'s family attended.

D.T.'s mother subsequently reported to police that D.T. told her that Davis had sexually abused him in December 2018. D.T. was interviewed by a social worker at CornerHouse. The social worker asked D.T. to describe the "situation right now," and D.T. replied: "I was physically raped." When asked what he meant by "physically raped," D.T. told the social worker that "Davis put the in the mouth and then [Davis] tried to do it in

2

my . . . a\*\*." When asked who Michael Davis was, D.T. answered, "He is the one who raped me." The social worker asked D.T. if he could repeat what he said about his mouth, and D.T. replied: "[Davis] put his thing in my mouth." D.T. told the social worker that he went back to Davis's home the next day. Davis took D.T. to the bedroom, took "his pants off and then he tried to put his thing in [D.T.]'s butt." The social worker asked D.T. if Davis ever made him feel uncomfortable any other times. D.T. replied: "Yeah, . . . we would fake wrestle . . . and [Davis] would like try to hump me." D.T. explained that he wrestled with Davis twice and while he was wrestling with Davis, Davis would try to touch his buttocks and penis over D.T.'s clothes.

Respondent State of Minnesota charged Davis by amended complaint with four counts of criminal sexual conduct, including two counts of first-degree criminal sexual conduct—while in a position of authority and the victim is between 13 and 16 years old, and one count of indecent exposure in the presence of a minor. The state moved the district court to admit Davis's out-of-state criminal-sexual-conduct convictions—and impose an aggravated sentence because of Davis's criminal history.

In July 2021, the district court granted the state's motion in part as to two of Davis's prior convictions.[1] The district court also granted the state's motion in part seeking to introduce evidence related to (1) Davis's use of a position of authority to sexually groom another male juvenile, S.S., (2) a letter written by D.T.'s aunt, and (3) evidence obtained

---

[1] Davis pleaded guilty in Utah state court to two counts of attempted third-degree forcible sex abuse. Count one took place "on or about June 15, 2005," and the second occurred "during 2004." In Minnesota, Davis's Utah convictions would be for fourth-degree criminal sexual conduct. *See* Minn. Stat. § 609.345, subd. 1 (2004).

from Davis's cell phone in the form of a screen shot of a book purchased by Davis,[2] and text messages from Davis's sister.

In May 2022, a jury trial was held. The district court, over Davis's objections, admitted evidence related to a book Davis purchased, text messages between Davis and his sister, and the testimony of M.B., a witness called by the state to describe organizational aspects within the church. The jury found Davis guilty as charged.

In September 2022, a *Blakely*[3] hearing was held on the state's motion seeking an aggravated sentence. The district court granted the state's departure request and sentenced Davis to 360 months in prison. This appeal followed.

**DECISION**

In this appeal, Davis raises objections to the district court's evidentiary rulings, witness testimony, and discovery violations by the state which he claims violated his right to a fair trial. Davis additionally asserts a claim of ineffective assistance of counsel, challenges the sufficiency of the evidence to support his conviction, and challenges the district court's calculation of his criminal-history score. We address each argument in turn.

*Evidentiary rulings*

**Book**

Davis first argues that the district court abused its discretion when it admitted evidence related to a book he purchased. Evidentiary rulings are within the district court's

---

[2] The stated asserted that this was an instructional book about how to work with troubled kids.
[3] *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) (requiring that aggravating sentencing factors be found by a jury); *State v. Reimer*, 962 N.W.2d 196, 197 (Minn. 2021).

sound discretion and will only be reversed when that discretion has been clearly abused. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (quotation omitted). Davis objected to the book evidence before trial, arguing that the exhibits were irrelevant and immaterial, but the district court overruled the objections. A district court's ruling on an evidentiary matter will not be reversed absent a clear abuse of discretion. *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012). On appeal, Davis must show that the district court abused its discretion and that he was prejudiced by the admission of the evidence. *See State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009). "A defendant is prejudiced by an evidentiary ruling when there is a reasonable possibility that without the error the verdict might have been more favorable to the defendant." *State v. Miller*, 754 N.W.2d 686, 700 (Minn. 2008) (quotations omitted).

The book evidence included: (1) a purchase order, (2) a delivery order, (3) a photo of the book found on Davis's cell phone, and (4) a photo of the book taken by police while searching Davis's home.

Davis argues that any evidence related to the book was irrelevant to any material issue in the case. The state contends that this evidence showed "[Davis]'s position of authority"; specifically, as to "his mentoring or providing guidance to [D.T.] or children in general." And "[Davis]'s planning and his intent; specifically, how he could better relate to [D.T.]" Davis alternatively argues that even if the evidence pertaining to the book is relevant, it nevertheless must be excluded as it was unduly prejudicial. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. Davis claims that because the book had the word

5

"parenting" in the subtitle, the probative value was outweighed by its prejudice. We are not persuaded. The probative value of the book outweighed its potential prejudice. Therefore, the district court did not abuse its discretion when it admitted the book evidence.

Next, Davis contends that the book evidence was admitted without proper foundation. Evidence admitted without a proper foundation violates a defendant's Sixth Amendment right to confront the witnesses against him. *See* U.S. Const. amend. VI; Minn. Const. art. I, § 6 ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.").

"[T]he primary objective behind the adoption of the Confrontation Clause was to regulate the admission of testimonial hearsay by witnesses against the defendant." *State v. Lopez-Ramos*, 929 N.W.2d 414, 417-18 (Minn. 2019). Thus, the Confrontation Clause "prohibits admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *State v. Warsame*, 735 N.W.2d 684, 689 (Minn. 2007) (quotation omitted). This evidence, however, is not the evidence the Confrontation Clause intended to be inadmissible because there is no witness to confront.

Davis also argues that the book evidence violates the Minnesota Rules of Evidence. Rule 901 provides that evidence has been properly authenticated if there is evidence "sufficient to support a finding that the matter in question is what its proponent claims." Minn. R. Evid. 901(a). The rules do not prescribe particular means of authentication. *See* Minn. R. Evid. 901(b) (listing examples of authentication not by way of limitation).

> Preliminary questions concerning the . . . admissibility of evidence shall be determined by the [district] court, [except]
>
> . . . .
>
> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the [district] court shall admit it upon, or in [its] discretion subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Minn. R. Evid. 104(a)-(b).

Even if the district court abused its discretion, any error in admitting the book evidence did not impact the verdict where the evidence against Davis was strong given the numerous exhibits and multiple witnesses—primarily D.T.'s testimony and the CornerHouse interview. The district court was within its broad discretion when it admitted the evidence as relevant.

Davis also argues that the district court erred when it admitted hearsay evidence, including (1) text messages between Davis and his sister, and (2) M.B.'s testimony, a witness called by the state.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the mater asserted." Minn. R. Evid. 801(c). Hearsay is inadmissible unless an exception applies. Minn. R. Evid. 802. Hearsay is excluded to protect the defendant's right to cross-examine the declarant. *State v. Ferguson*, 804 N.W.2d 586, 594 (Minn. 2011) (Anderson, Paul H., Justice, concurring). But a statement made out of court is not considered hearsay if it is admitted into evidence for a purpose other than to prove the truth of the matter asserted in the statement. *State v. Moua*, 678 N.W.2d 29, 37 (Minn. 2004).

*Text messages*

Prior to admitting the state's text-message evidence, the district court noted that "text messages do not contain inadmissible hearsay; text messages contain statements by an opposing party, which means they are not hearsay. Statements contained within the text messages are not hearsay because they were offered against him and they were [Davis]'s own statement." Davis's counsel responded: "It's not Mr. Davis's statement that we're concerned about. It's [his sister]'s." Davis challenges the admissibility of the test-message evidence.

Even if we assume without deciding that the text messages sent by Davis's sister were inadmissible, the text messages were not prejudicial because the state presented substantial evidence showing that Davis was in a position of authority over D.T. *See Sanders*, 775 N.W.2d at 887; *Miller*, 754 N.W.2d at 700.

*Witness testimony*

The state identified M.B. as a witness in October 2021. Davis moved to exclude M.B.'s testimony as irrelevant. The district court determined that M.B.'s testimony regarding the church's "structure" was relevant and denied Davis's motion to exclude the testimony.

M.B. testified that he was baptized in the church about 39 years ago. During his time with the church, M.B. has held various leadership positions. M.B.'s testimony was offered to give the jury an explanation of various aspects of the church, such as the members, leadership positions, and the general organizational structure of the church in Minnesota.

8

Davis argues that because M.B. did not have personal knowledge of Davis's role within the church—only general knowledge of the church—his testimony was prohibited by rule 602. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Minn. R. Evid. 602.

Here, M.B. had personal knowledge based on his own experience as a member of the church and could explain the roles of various leadership positions within the church. Moreover, Davis's trial counsel had the opportunity to fully prepare to cross-examine M.B.

The state asked M.B. to give his opinion about whether someone with a leadership position at the church would "ever take a youth or a young man and go visit a family?" M.B. answered:

> He definitely could . . . . And I think what I experienced when I was [in a leadership position] . . . and what I've experienced as a member with [a leader in charge of me] is there's a lot of . . . respect and prestige with the [leadership-position] title, that if I were to call up a family and say, hey, I'd like to come visit you or, hey, I'd like to take your son out to go visit a family, there would be no questions asked because of the ranking of that title. A family has just automatic trust in [the leadership position] and would assume that it's fine to go with that person and go visit a family.

Davis objected to M.B.'s statement as speculative and nonresponsive. And the district court overruled the objection.

The record shows that M.B.'s testimony consisted of about 30 pages of transcripts, much of which focused on the church's structure and various terms of art used by the

9

church and its members.  Therefore, the district court did not abuse its discretion when it allowed M.B. to testify over Davis's objection.

***Discovery violation***

Davis argues that the district court abused its discretion when it denied his motion requesting an order to obtain evidence from the state.  Davis contends that the state failed to procure certain evidence that he requested because of an inability to obtain such evidence through alternative means.  The discovery violations Davis claims relate to his access, or lack thereof, to D.T. to conduct a pretrial interview and, once denied such access by the state, its refusal to conduct said interview for him.  This argument is without merit.

"Under *Brady*[4], the suppression by the [s]tate, whether intentional or not, of material evidence favorable to the defendant violates the constitutional guarantee of due process."  *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010).  Whether evidence is material under *Brady* "involves a mixed issue of fact and law, [appellate courts] review a district court's materiality determination de novo."  *Id.*  The reviewing court should not order a new trial to remedy a discovery violation unless there is a reasonable probability that the evidence would have affected the outcome of the trial.  *State v. Clobes*, 422 N.W.2d 252, 255 (Minn. 1988).

The state must disclose any "[m]aterial or information in the prosecutor's possession and control that tends to negate or reduce the defendant's guilt."  Minn. R. Crim. P. 9.01, subd. 1(6).  The state must also disclose any statements "known to the prosecutor that relate

---

[4] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

to the case," including "the substance of oral statements." *Id.*, subd. 1(2)(c). The word "any" in this context means "every." *State v. Palubicki*, 700 N.W.2d 476, 490 (Minn. 2005). Rule 9.01, subd. 2(3), provides that:

> On the defendant's motion, the [district] court at any time before trial may, in its discretion, require the prosecutor to disclose to defense counsel and to permit the inspection, reproduction, or testing of any relevant material and information not subject to disclosure without order of court under [r]ule 9.01, subd. 1, provided however, a showing is made that the information may relate to the guilt or innocence of the defendant or negate guilt or reduce the culpability of the defendant as to the offense charged.

Minn. R. Crim. P. 9.01, subd. 2(3). The Minnesota Rules of Criminal Procedure, however, "allow only limited discovery, with a handful of provisions meant to give the defendant and prosecution as complete discovery as is possible under constitutional limitations." *In re Program to Aid Victims of Sexual Assault*, 943 N.W.2d 673, 676 (Minn. App. 2020) (quotation omitted).

"Evidence is material under *Brady* if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Zornes v. State*, 903 N.W.2d 411, 418 (Minn. 2017) (quotations omitted). Davis, however, has failed to show a *Brady* violation. Because the evidence Davis seeks did not exist—a second interview with the claimant about whether he knew about Davis's sex-offender status—the state was not obligated to create such evidence for Davis.

But even if there was a discovery violation, Davis has failed to show how his defense was prejudiced by the inability to conduct a pretrial interview with D.T. During the jury trial, D.T. testified. Davis had the opportunity to cross-examine D.T. Further, the state

11

provided Davis with a copy of the CornerHouse transcript before trial. The state's delivery of the CornerHouse transcript allowed Davis to form a defense and formulate a strategy to cross-examine D.T. at trial. The district court did not abuse its discretion when it denied Davis's motion to compel a pretrial interview with D.T.

### *Ineffective assistance of counsel*

Davis argues that he received ineffective assistance of counsel because his trial counsel failed to investigate Davis's theory of the case and failed to call a crucial witness. Appellate courts apply the two-prong *Strickland*[5] test to evaluate an ineffective-assistance-of-counsel claim. *State v. King*, 990 N.W.2d 406, 417 (Minn. 2023).

The first prong requires the appellant to show that his "attorney's representation fell below an objective standard of reasonableness." *Id.* (quotations omitted). The second prong requires the appellant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotations omitted). If one prong is determinative, we need not address the other. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

An attorney performs within an "objective standard of reasonableness" when he provides "the representation of an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under the circumstances." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999) (quotation omitted). There is also a "strong presumption" that counsel's conduct meets this standard. *King*, 990 N.W.2d at 417

---

[5] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

(quotation omitted). Matters involving trial strategy are generally not reviewed by appellate courts, including counsel's decisions about what evidence to present. *State v. Mems*, 708 N.W.2d 526, 534 (Minn. 2006).

To prove prejudice resulting from an attorney's deficient performance, Davis must show that there is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *See State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013). "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a proceeding]." *Strickland*, 466 U.S. at 694.

We consider each of Davis's ineffective-assistance-of-counsel claims individually.

### *Failure to investigate*

Davis contends that his counsel was ineffective for failing to conduct a pretrial interview with D.T.

Davis bears the burden to show that a reasonably competent attorney would have ensured that a pretrial interview with D.T. was conducted and the failure to do so prejudiced him. *See King*, 990 N.W.2d at 417. An attorney's investigation into a defense is considered trial strategy, which we generally will not review. *See Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004). But the failure to investigate a defense may constitute unreasonable representation if the failure was due to "inattention or neglect." *Swaney v. State*, 882 N.W.2d 207, 218 (Minn. 2016). However, even an incomplete investigation is objectively reasonable if supported by the circumstances or if counsel made a reasoned decision that made further investigation unnecessary. *Id.*

13

Here, Davis claims that a proper defense required interviewing D.T. to determine when D.T. learned that Davis was a registered sex offender. Davis's counsel moved the district court to compel the state to either allow Davis to conduct a pretrial interview of D.T. or, alternatively, have the state conduct an interview for Davis. The district court denied Davis's motion. Therefore, the failure to conduct the pretrial interview with D.T. cannot be attributed to trial counsel's "inattention or neglect." *See id.* Further, we note that given the circumstances and the strong case the state presented against Davis "when" D.T. learned of Davis's previous criminal sexual conduct is immaterial. Because Davis failed to show that his counsel's representation fell below an objective standard of reasonableness under prong one, we need not address prong two. *See Rhodes*, 657 N.W.2d at 842.

### Failure to call a witness

Davis also contends that his counsel was ineffective for failing to call a witness who was "more equipped to discuss [Davis]'s position within the church" than M.B. Davis bears the burden to show that a reasonably competent attorney would have called the witness and that the failure to do so prejudiced him. "Decisions about which witnesses to call at trial and what information to present to the jury are questions of trial strategy that lie within the discretion of trial counsel." *Leake v. State*, 737 N.W.2d 531, 539 (Minn. 2007).[6] This court will not second guess the trial-strategy decision of which

---

[6] *See, e.g.*, *Andersen v. State*, 830 N.W.2d 1, 13 (Minn. 2013) (noting that decision to call exculpatory witnesses falls within trial strategy and is not reviewable on appeal); *Scruggs v. State*, 484 N.W.2d 21, 26-27 (Minn. 1992) (determining that trial counsel's failure to call three potential witnesses was within counsel's trial strategy).

witnesses to call. *Leake*, 737 N.W.2d at 539. Because Davis failed to show that his counsel's representation fell below an objective standard of reasonableness under prong one, we need not address prong two. *See Rhodes*, 657 N.W.2d at 842.

**Sufficiency of the evidence**

Davis argues that the state failed to present sufficient evidence to sustain the jury's finding that he was in a position of authority over D.T. when he committed the offenses.

Whether a defendant's conduct meets the definition of a particular offense presents a question of statutory interpretation that appellate courts review de novo. *State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013). When considering a sufficiency-of-the-evidence claim, appellate courts examine the record to determine whether the evidence, when viewed in the light most favorable to the conviction, could reasonably support the verdict. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004). "We will not disturb a guilty verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [a] defendant was proven guilty of the offense charged." *Staunton v. State*, 784 N.W.2d 289, 297 (Minn. 2010) (alteration in original) (quotations omitted). The reviewing court must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

To be found guilty of the first-degree criminal-sexual-conduct charge, the state had to prove beyond a reasonable doubt, among other things, that: Davis was "in a position of authority over" D.T. *See* Minn. Stat. § 609.342, subd. 1(b) (2018).

The phrase "position of authority"

> includes but is not limited to any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities to a child, or a person who is charged with any duty or responsibility for the health, welfare, or supervision of a child, either independently or through another, no matter how brief, at the time of the act.

Minn. Stat. § 609.341, subd. 10 (2018). "[T]he circumstances in which a person is in a position of authority are not limited to the examples of 'position of authority' described in section 609.341, subdivision 10." *State v. Rucker*, 752 N.W.2d 538, 546 (Minn. App. 2008), *rev. denied* (Minn. Sept. 23, 2008). The statutory definition is instead "broadly defined." *State v. Willette*, 421 N.W.2d 342, 345 (Minn. App. 1988), *rev. denied* (Minn. May 16, 1988).

The record shows that the state presented sufficient direct evidence to meet its burden of proof beyond a reasonable doubt to establish that Davis was in a position of authority over D.T. at the time of the offenses.

The state presented the following direct evidence: (1) transcripts of D.T.'s CornerHouse interview; (2) D.T.'s testimony; and (3) M.B.'s testimony.[7] In a criminal-sexual-conduct prosecution, the claimant's testimony need not be corroborated to support a conviction; indeed, in any criminal case a conviction may rest on the testimony of a single, credible witness. Minn. Stat. § 609.347, subd. 1 (2018); *State v. Hill*, 172 N.W.2d 406, 407 (Minn. 1969). In viewing the facts in the light most favorable to the verdict, the

---

[7] As noted above, even without the text-message evidence, the state presented sufficient evidence to prove that Davis was in a position of authority over D.T. at the time of the offense.

jury determined D.T.'s testimony to be credible.  *See Bernhardt*, 684 N.W.2d at 476-77; *Moore*, 438 N.W.2d at 108.  Based on the direct evidence presented by the state and given the direct-evidence standard of review, the state presented sufficient evidence to meet its burden of proof beyond a reasonable doubt that Davis was guilty of the charged offenses.

***Criminal-history score***

Davis argues that the district court erred when it calculated his criminal-history score because his prior out-of-state convictions arose from the same behavioral incident.

Generally, we review a criminal-history score for an abuse of discretion.  *State v. Strobel*, 921 N.W.2d 563, 573 (Minn. App. 2018), *aff'd*, 932 N.W.2d 303 (Minn. 2019).  The "[i]nterpretation of the Minnesota Sentencing Guidelines is a question of law that [appellate courts] review de novo."  *Strobel*, 932 N.W.2d at 306.

The state bears the burden of proving by a fair preponderance of the evidence that a prior conviction qualifies for inclusion in a defendant's criminal-history score.  *State v. Maley*, 714 N.W.2d 708, 711 (Minn. App. 2006).  A fair preponderance of the evidence means that the evidence of the conviction must lead the district court to believe it is more likely than not that it exists.  *See State v. Wahlberg*, 296 N.W.2d 408, 418 (Minn. 1980).  A sentence based on an incorrect criminal-history score is an illegal sentence that may be corrected at any time.  *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007).

A defendant's criminal-history score consists of the sum of points from eligible prior offenses and the defendant's custody status at the time that the defendant committed the offense at issue.  Minn. Sent'g Guidelines 2.B. (2018).  When calculating the criminal-history score for a prior out-of-state offense, the guidelines instruct district courts

17

to "[f]ind the equivalent Minnesota offense based on the elements of the prior non-Minnesota offense." Minn. Sent'g Guidelines 2.B.5.b.

Generally, when a defendant is sentenced for multiple offenses on the same day, as Davis was in Utah, points for the defendant's previously sentenced offenses are included in the defendant's criminal-history score for subsequently sentenced offenses. *State v. Williams*, 771 N.W.2d 514, 521 (Minn. 2009). But an exception exists when multiple offenses "aris[e] from a single course of conduct involving multiple victims." Minn. Sent'g Guidelines 2.B.1.d(2). In these cases, only the weights from the two offenses at the highest severity levels are included in the defendant's criminal-history score. *Id.*

Whether multiple offenses arose out of a single course of conduct presents a mixed question of fact and law. *State v. Jones*, 848 N.W.2d 528, 533 (Minn. 2014). When the facts are undisputed, we review de novo whether multiple acts form a single course of conduct. *State v. McCauley*, 820 N.W.2d 577, 591 (Minn. App. 2012), *rev. denied* (Minn. Oct.24, 2012).

Davis does not challenge the facts pertaining to the out-of-state convictions. The remaining issue is therefore whether the out-of-state convictions arose from a single course of conduct.

To determine whether multiple prior offenses formed a single course of conduct, appellate courts consider two factors: "(1) whether the offenses occurred at substantially the same time and place, and (2) whether the conduct was motivated by an effort to obtain a single criminal objective." *State v. Bakken*, 883 N.W.2d 264, 270 (Minn. 2016) (quotations omitted). "The application of this test depends heavily on the facts and

18

circumstances of the particular case." *State v. Bauer*, 792 N.W.2d 825, 828 (Minn. 2011); *see Bakken*, 883 N.W.2d at 270 ("[d]etermining whether multiple offenses are part of a single behavioral incident is not a 'mechanical' exercise").

Here, Davis pleaded guilty to two separate offenses for two separate instances of criminal sexual conduct committed against the same victim, which took place in two different years—June 2005 and 2004. When the criminal sexual conduct involves the same complainant but took place years apart, that conduct cannot be considered of the same behavioral incident. *See Bakken*, 883 N.W.2d at 270. Therefore, the district court did not err when it calculated Davis's criminal-history score.

**Affirmed.**