
STATE of Minnesota, Respondent,

v.

Eddie Matthew MOSLEY, Appellant.

A16-1385

Supreme Court of Minnesota.

Filed: April 26, 2017

Rehearing Denied June 6, 2017

See also 2013 WL 11317734; 2013 WL 11317742; 2014 WL 6490687.

Lori Swanson, Attorney General, Saint Paul Minnesota; and Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Eddie Matthew Mosley, Rush City, Minnesota, pro se.

## OPINION

MCKEIG, Justice.

Appellant Eddie Matthew Mosley was convicted of three counts of first-degree premeditated murder. Mosley appealed his conviction, and we affirmed. *State v. Mosley*, 853 N.W.2d 789 (Minn. 2014), *cert. denied*, —— U.S. ——, 135 S. Ct. 1185, 191 L.Ed.2d 142 (2015). Mosley filed a petition for postconviction relief, claiming he was entitled to a new trial based on newly discovered evidence in the form of affidavits signed by five alibi witnesses. He also claimed his trial counsel and appellate counsel provided ineffective assistance. The postconviction court summarily denied Mosley's petition. We affirm.

## FACTS

On April 9, 2012, DeLois Brown and her parents, Clover and James Bolden, were found shot to death in Brown's house in Brooklyn Park.[1] Following a police investi-

---

1. A more detailed description of the facts regarding these murders and Mosley's trial is

gation, a Hennepin County grand jury indicted Mosley for several offenses in connection with the shooting deaths of Brown and the Boldens, including three counts of first-degree premeditated murder. Mosley waived his right to a jury trial and submitted his case to the district court.

At Mosley's bench trial, the State presented the following evidence. Mosley, a resident of St. Louis, Missouri, has the same father as Brown's daughter, W.H., and had a close relationship with Brown and the Boldens. A few days before the murders, Mosley was served with a first-degree criminal sexual conduct (CSC) charge arising out of W.H.'s report that Mosley had sexually molested her daughter. Mosley called and texted W.H., begging her to have the charge dropped. The defense objected to the introduction of the charge at Mosley's murder trial, but the district court admitted the charge as evidence of Mosley's motive.

There was conflicting evidence regarding Mosley's location on April 8 and 9, 2012. According to Mosley's friend, M.T., he drove with Mosley from St. Louis to Brooklyn Park and back within approximately 24 hours, leaving St. Louis in the early evening hours of April 8, arriving in Brooklyn Park in the early morning hours of April 9, and returning to St. Louis later in the day on April 9. M.T.'s cellphone records confirmed the trip, and Mosley's roommates said they did not see Mosley or his car during the time in question.

By contrast, Mosley's half-brother, J.P., testified that he saw Mosley at a family party in St. Louis on April 8 from 6 p.m. until late at night. J.P. also testified that Mosley sent him a letter before trial asking him to have people who attended the party talk to Mosley's investigator and prepare statements. J.P. spoke to these potential witnesses, and gave their names to Mosley's investigator.[2] In addition, Mosley's cellphone records indicated that his phone did not leave St. Louis during the time in question. The records also showed that someone used Mosley's phone, which was not password protected, to make a 19-second call to one of his roommates on April 9 at 11:42 a.m. But the roommate testified that she did not speak to Mosley at that time.

M.T. testified that after he and Mosley arrived in Brooklyn Park in the early morning hours of April 9, they parked in Brown's neighborhood. Mosley changed his clothes, retrieved a bicycle from the back of the car, and pedaled toward Brown's home. M.T.'s testimony was corroborated by the eyewitness testimony of a garbage truck driver and two other drivers, as well as video surveillance from a gas station.

Brown ran a daycare out of her home. One of the daycare parents testified that, just before the shooting, she saw a man matching Mosley's description riding a bicycle in front of Brown's home. The parent called Brown to alert her, and heard Brown yell at someone before the call was disconnected. The parent drove back to Brown's home and saw the bicycle on the

---

set forth in *Mosley*, 853 N.W.2d at 793-95.

**2.** Just before trial, in April 2013, the district court held an ex parte hearing with Mosley's defense counsel during which it discussed Mosley's investigation expenses. Specifically, Mosley's investigator had exceeded Mosley's state investigation funding without approval or detailed accounting. The court assured Mosley that only the investigator's expenses

were at issue, and that it did not reflect upon Mosley's case or "the quality of work that [the investigator] ha[d] done." The court acknowledged that the investigator had spent 60 hours investigating Mosley's case, including two full days in St. Louis, and that as a result of the investigation, defense counsel expected to subpoena two witnesses to Minnesota.

front lawn. She saw the man leave Brown's home, stuff something in his clothes, and ride away on the bicycle. She then followed the man in her car until he rode his bicycle over a grassy berm, at which point she returned to Brown's home where she found Brown and the Boldens dead. The parent identified Mosley in court as the man she saw at Brown's home. The defense objected that this in-court identification violated Mosley's due process rights. The district court overruled the objection and admitted the identification evidence.

When Mosley returned to the vehicle, M.T. observed blood on Mosley's face and two layers of gloves on his hands. Mosley told M.T. that he "f—ed up," and produced a gun. He then drove M.T. back to St. Louis. On the way, M.T. watched Mosley use gasoline to burn his clothes and shoes; throw ammunition out of the car window; try to break the gun apart and then throw it into a river; and wipe down and abandon the bicycle. Investigators found physical evidence corroborating M.T.'s testimony.

Mosley was convicted of three counts of first-degree premeditated murder and sentenced to three consecutive life sentences without the possibility of release. Mosley appealed, arguing among other things that the daycare parent's in-court identification violated his due process rights as well as Rule 403 of the Minnesota Rules of Evidence. We affirmed.[3] The United States Supreme Court denied certiorari. *Mosley v. Minnesota,* —— U.S. ——, 135 S.Ct. 1185, 191 L.Ed.2d 142 (2015).

On December 21, 2015, Mosley filed a pro se petition for postconviction relief. Mosley argued that he was entitled to a new trial based on newly discovered evidence in the form of affidavits signed by five alibi witnesses. The five affiants alleged that Mosley was in St. Louis on the night of April 8 and morning of April 9, 2012. Two of the affiants stated that they saw Mosley at a party on the night of April 8, and that they had been contacted by Mosley's defense counsel, but were not called to testify. One affiant stated that she spoke to Mosley at his home on April 9 at 8:00 a.m. And the two remaining affiants stated that Mosley was cutting their grass on April 9 at 9:30 a.m.

Mosley also claimed that his trial counsel and appellate counsel provided ineffective assistance. He claimed that his trial counsel failed to perform an adequate investigation into potential alibi witnesses, and failed to properly object to evidence at trial. He claimed that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel during his direct appeal.

The postconviction court summarily denied Mosley's petition, concluding that (1) Mosley's newly discovered evidence claim failed because he knew or should have known of the alibi witnesses at the time of trial, and (2) his ineffective-assistance-of-counsel claims were meritless and his trial-counsel claims were also procedurally barred under *State v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737, 741 (1976). Mosley appealed.

## ANALYSIS

■ "We review a denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion." *Riley v. State,* 819 N.W.2d 162, 167 (Minn. 2012). A postcon-

---

**3.** Mosley alleges that we erred in his direct appeal when we applied the plain-error standard of review to his Rule 403 claim. *See Mosley,* 853 N.W.2d at 796-97 & n.2. But Mosley cannot challenge our previous deci-

sion through this postconviction appeal. Rather, he was required to raise this claim through a petition for rehearing filed within 10 days of the date of that decision. *See* Minn. R. Civ. App. P. 140.01.

viction court "abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). A postconviction court need not hold an evidentiary hearing when a petitioner "alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Fort v. State*, 829 N.W.2d 78, 82 (Minn. 2013) (quoting *Bobo v. State*, 820 N.W.2d 511, 517 (Minn. 2012)).

## I.

 We first address Mosley's argument that the postconviction court abused its discretion by summarily denying his request for a new trial based on newly discovered evidence in the form of affidavits signed by five alibi witnesses. To obtain a new trial based on newly discovered evidence, a defendant must prove that the evidence: (1) was not known to the defendant or defense counsel at the time of the trial; (2) could not have been discovered through due diligence before trial; (3) is not cumulative, impeaching, or doubtful; and (4) would probably result in an acquittal or a more favorable result. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997). If the defendant fails to establish any one of these requirements, we need not discuss any of the others. *Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013).

Here, two of the affiants swear that they spoke with Mosley's defense counsel before trial. Specifically, the affiants allege that they were contacted by defense counsel, and that they told counsel and the defense investigator they were willing to testify, but they were not called as witnesses. These affidavits fail to satisfy the first requirement of the *Rainer* test, which

requires Mosley to prove that the newly discovered evidence was not known to his attorney at the time of trial. *Rainer*, 566 N.W.2d at 695.

The remaining affiants swear that they saw Mosley in St. Louis during the time in question, but do not allege that they spoke to counsel before Mosley's trial. Even if Mosley proved these allegations by a preponderance of the evidence at an evidentiary hearing, he could not satisfy the third requirement of the *Rainer* test, which requires him to prove that the newly discovered evidence is not cumulative. *Id.* J.P. testified at trial that he saw Mosley at a family party in St. Louis during the time in question, and therefore additional testimony by the affiants that Mosley was in St. Louis during the time in question would have been cumulative. Because the facts alleged in the five affidavits were legally insufficient to satisfy the *Rainer* test, the postconviction court did not abuse its discretion by summarily denying Mosley's request for a new trial based on newly discovered evidence.

## II.

 We next address Mosley's argument that the postconviction court abused its discretion by summarily denying his request for a new trial based on his claim that both his trial counsel and appellate counsel rendered him ineffective assistance. According to Mosley, his trial counsel was ineffective for (1) failing to perform a thorough investigation, which Mosley asserts would have uncovered more alibi witnesses; (2) failing to object under Minn. R. Evid. 403 to in-court identification testimony; and (3) failing to object under Minn. R. Evid. 608 and 609 to the introduction of his CSC charge.[4]

---

4. Mosley also claims that his trial counsel refused to provide him with his 2012 phone

records, and that he was able to procure the five additional alibi affidavits only after his

Mosley claims that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal.

■ As discussed above, a postconviction court need not hold an evidentiary hearing when a petitioner "alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Fort*, 829 N.W.2d at 82 (quoting *Bobo*, 820 N.W.2d at 517). To prove ineffective assistance of counsel, a defendant must show that (1) "his attorney's performance fell below an objective standard of reasonableness," and (2) "a reasonable probability exists that the outcome would have been different, but for counsel's errors." *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007); *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome of the case." *Swaney v. State*, 882 N.W.2d 207, 217 (Minn. 2016). We review a district court's application of the *Strickland* test de novo because it involves a mixed question of law and fact. *Griffin v. State*, 883 N.W.2d 282, 287 (Minn. 2016). If a claim fails to satisfy one of the *Strickland* requirements, we need not consider the other requirement. *Swaney*, 882 N.W.2d at 217.

According to Mosley, had his trial counsel discovered and presented the five additional alibi witnesses, there is a reasonable probability that the outcome of his trial would have been different. We disagree. Even if proven by a preponderance of the evidence, the facts alleged by Mosley regarding his trial counsel's investigation are legally insufficient to undermine our confidence in the outcome of his trial. Again, the testimony of the five additional alibi witnesses would have been cumulative to J.P.'s testimony that he saw Mosley at a family party in St. Louis during the time in question. Moreover, the evidence of guilt was "overwhelming," including:

> W.H.'s testimony regarding Mosley's motive; M.T.'s detailed testimony placing Mosley near the scene of the crime at the time of the murders, his testimony that Mosley returned with blood on his face, and that Mosley then disposed of various pieces of incriminating evidence during the journey back to St. Louis; the daycare parent's testimony that she saw Mosley on a bicycle in front of Brown's house and then saw him leave Brown's house moments before she discovered the bodies of the three victims; and the various surveillance videos and eyewitness testimony that corroborated M.T.'s and the daycare parent's accounts.

*Mosley*, 853 N.W.2d at 801-02; *see also State v. Rhodes*, 657 N.W.2d 823, 843 (Minn. 2003) (holding that it was unlikely that the testimony of two new exculpatory witnesses would change the trial outcome when several witnesses and the physical evidence rebutted their testimony). Thus, the postconviction court did not abuse its discretion by summarily denying Mosley's request for a new trial based on his claim that his trial counsel failed to perform a thorough investigation.

■ Mosley also argues that his trial counsel was ineffective by failing to object to in-court identification testimony under Minn. R. Evid. 403, and failing to object to the introduction of his CSC

---

appellate counsel provided the phone records in 2015. But Mosley did not raise this claim in his petition to the postconviction court. Thus, the claim has been forfeited. *See Azure v. State*, 700 N.W.2d 443, 447 (Minn. 2005) (" 'It is well settled that a party may not raise issues for the first time on appeal' from denial of postconviction relief." (quoting *Robinson v. State*, 567 N.W.2d 491, 494 n.2 (Minn. 1997))).

charge under Minn. R. Evid. 608 and 609.[5] Even if proven by a preponderance of the evidence, the facts alleged by Mosley are legally insufficient to show that his attorney's performance was unreasonable. It is well-established that we give an attorney's trial-strategy decisions "particular deference." *State v. Nicks*, 831 N.W.2d 493, 505 (Minn. 2013). Generally, "[d]ecisions about objections at trial are matters of trial strategy," which we will not review. *Leake v. State*, 737 N.W.2d 531, 542 (Minn. 2007). Therefore, the postconviction court did not abuse its discretion by summarily denying Mosley's request for a new trial based on his claim that his trial counsel rendered ineffective assistance.

Finally, Mosley claims that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal. But appellate counsel is not required to raise a claim if counsel "could have legitimately concluded that it would not prevail." *Arredondo v. State*, 754 N.W.2d 566, 571 (Minn. 2008) (quoting *Cooper v. State*, 745 N.W.2d 188, 193 (Minn. 2008)). As discussed above, the facts alleged by Mosley regarding his trial counsel's purported deficiencies are legally insufficient to satisfy the requirements of *Strickland*. Consequently, Mosley's claim that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal is also legally insufficient to satisfy the requirements of *Strickland*. Accordingly, the postconviction court did not abuse its

discretion by summarily denying Mosley's request for a new trial based on ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the postconviction court.

Affirmed.