*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0764**

State of Minnesota,
Respondent,

vs.

Esais Joseph Menasi,
Appellant.

**Filed March 4, 2024**
**Affirmed**
**Kirk, Judge***

Dakota County District Court
File No. 19AV-VB-22-7374

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Alina Schwartz, Burnsville City Attorney, Campbell Knutson, P.A., Eagan, Minnesota
(for respondent)

Esais Menasi, Rochester, Minnesota (pro se appellant)

Considered and decided by Larkin, Presiding Judge; Gaïtas, Judge; and Kirk, Judge.

**NONPRECEDENTIAL OPINION**

**KIRK**, Judge

In this appeal from a petty-misdemeanor citation for speeding, appellant argues that

he received ineffective assistance of counsel. We affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

## FACTS

Early in the morning on July 27, 2022, appellant Joseph Menasi was pulled over for speeding in Burnsville. Officer Paul Elmstrand (the officer) was patrolling on McAndrews Road when he observed a 2021 silver Toyota SUV traveling eastbound towards him at a very high speed. This was a 35-miles-per-hour (mph) zone and, based on his training and experience, the officer believed Menasi was traveling "at a much higher rate of speed than normal moving traffic at [that] hour." The officer activated the radar device in his squad car, and "the immediate reading on the screen was 71 miles per hour in a 35 mile an hour zone." At "[t]he next available turn around, which was right at Parkwood where the curb stops, [the officer] was able to maneuver behind the violator, while keeping it in sight." The officer conducted a traffic stop near the intersection of McAndrews Road and Echo Park Lane, which was a 45-mph zone. The officer identified Menasi with his state-issued driver's license and issued a citation for speeding.

Menasi was cited for driving 71 mph in a 35-mph zone. Menasi declined an offer to plead guilty, and instead chose to hire private counsel and proceed to a court trial. At trial, the only testimony was from the officer, and Menasi's attorney cross-examined him, particularly about the U-turn he made to conduct the traffic stop, his ability to keep the speeding vehicle in his line of sight, and the lack of squad car video. Menasi's attorney provided a closing argument where he claimed that "the vehicle that the officer first observed at a high rate of speed was not Mr. Menasi's vehicle." The district court was not persuaded and found Menasi guilty of speeding in violation of Minn. Stat. § 169.14, subd.

2(a) (2020), a petty-misdemeanor offense, and ordered him to pay a fine and surcharge totaling $280. This appeal follows.

**DECISION**

Both the United States and Minnesota Constitutions give criminal defendants a right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. The parties assume, without discussion or citation to legal authority, that appellant has a constitutional right to effective assistance of counsel in this case. But a petty misdemeanor is not a crime. Minn. Stat. § 609.02, subd. 4a (2022) ("'Petty misdemeanor' means a petty offense which is prohibited by statute, which does not constitute a crime and for which a sentence of a fine of not more than $300 may be imposed."). Because the right to an attorney applies to criminal defendants, it does not apply to a non-criminal case.

If the issue of whether there is a constitutional right to counsel in a civil case were either novel or questionable, it might be appropriate for us to solicit additional briefing on that issue. However, the law is clear. Moreover, it is the responsibility of appellate courts to decide cases in accordance with the law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities. *State v. Hannuksela*, 452 N.W.2d 668, 674 n.7 (Minn. 1990). We therefore hold that appellant does not have a constitutional right to effective assistance of counsel in this petty-misdemeanor, non-criminal case. And even if this was a criminal case, appellant's claim that his attorney was constitutionally ineffective would fail.[1]

---

[1] The city attorney frames Menasi's pro se brief as also arguing sufficiency of the evidence. Menasi's brief suggests that the evidence would have been insufficient if the attorney had

3

If a defendant claims ineffective assistance of counsel, they must show two things: (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Jones*, 977 N.W.2d 177, 193 (Minn. 2022) (quotation omitted); *see also Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). The burden of proof is on the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "[A]ll of the circumstances" are considered when evaluating counsel's performance. *Id*.

This court reviews an ineffective-assistance-of-counsel claim de novo because it involves a mixed question of law and fact. *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017). If a claim fails to satisfy one requirement under *Strickland*, the other requirement need not be considered. *Id*. "[M]atters of trial strategy. . . will not be reviewed later by an appellate court as long as the trial strategy was reasonable." *Ives v. State*, 655 N.W.2d 633, 636 (Minn. 2003).

Menasi argues that his attorney: (1) failed to collect all of the evidence, (2) failed to question the accuracy of the radar, (3) failed to fully question the accuracy of the officer's testimony, and (4) did not address certain additional evidence. Under the first prong of *Strickland*, an objective standard of reasonableness is "representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would

---

introduced the evidence Menasi wanted, thereby only really raising an argument of ineffective assistance of counsel. Even if there is a sufficiency of the evidence argument, the record supports the district court's findings and conclusions. *See State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016).

perform under similar circumstances." *Jones*, 977 N.W.2d at 193. There is a strong presumption that counsel's performance was reasonable, and generally matters of trial strategy are not reviewed. *Id*. Menasi fails to explain how his attorney's representation falls below an objective standard of reasonableness, instead taking issue with the strategy employed, which this court does not review.

First, Menasi argues that his attorney did not "collect all of the evidence that we talked about requesting," which includes a disciplinary report for the officer and a certification of accuracy for the tuning forks used with the radar. As the city attorney correctly argues, the prosecutor is required to disclose a disciplinary report if it could be used to impeach the officer and the credibility of the officer is material. *United States v. Giglio*, 405 U.S. 150, 154 (1972). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The district court found the officer credible, and this court defers to the district court's credibility determination. *See State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd,* 508 U.S. 366 (1993). And Menasi has failed to meet his burden of demonstrating that the officer's disciplinary record, if one even exists, would have changed the outcome of this case.

Second, Menasi argues that his attorney should have challenged the accuracy of the radar in the officer's squad car. For a speeding violation where a radar was used, the primary issue is the accuracy of the radar, and it is presumed to be accurate if it has been properly tested and is operated by someone who is trained to do so. *State v. Ali*, 679

5

N.W.2d 359, 364 (Minn. App. 2004). The officer testified that at the start of each shift he performs "an internal check of the functions of [his squad car's] radar unit, as well as an external check, which involves checking the radar's function with tuning forks" and on the day of Menasi's speeding violation he performed these checks and found his squad car's radar to be properly functioning. The officer also testified extensively to the process of using tuning forks to externally test the radar and the science behind it all. He said he used the radar earlier in his shift for other speeding tickets without issue. The most recent certificate of accuracy, from 2020, was also admitted into evidence with no objection.[2]

The officer further testified that he has a lot of experience using radar and is even a radar instructor, training new officers on how to use the relevant device. The district court found the officer "has training and experience in the operation of radar equipment used in his squad car." The officer's testimony led the district court to conclude, "On the date of the incident, there were no issues that indicated that the radar was not operating correctly." Based on the evidence presented, it was reasonable for Menasi's counsel not to question the officer further on this matter and there was no other known accuracy certificate or reason to believe the one admitted into evidence was not accurate.

Third, Menasi argues that the officer lied about the speed zone and about Menasi continuing to speed and overtake other cars, suggesting his lawyer should have cross-examined the officer on these points. The trial transcript defeats these arguments. On

---

[2] In his brief, Menasi mentions a certificate of accuracy for the tuning forks used to test the radar. This request was not made at trial, and it seems unnecessary given the overwhelming evidence of the accuracy of the radar at the time of the citation.

direct examination, the officer testified that when he stopped Menasi, they were in a 45-mph zone and the speed limit had changed from 35 to 45 when they crossed over Interstate 35E. He further testified he is confident that he received the 71-mph reading while Menasi was still in the 35-mph zone. As a practical matter, going 71 mph in a 45-mph zone is still speeding. The officer testified he was "able to keep the violator vehicle in sight" despite the other traffic the violator was overtaking, that it took him less than a minute to get directly behind Menasi's vehicle, and that after he activated his squad car lights, Menasi was compliant and pulled over.

On cross-examination, Menasi's attorney questioned the officer extensively about his ability to keep his sights on the silver SUV amidst the heavy traffic and having to make a U-turn. Again, the district court found the officer's recollection of events credible, and we defer to the district court's credibility determinations. *See Dickerson*, 481 N.W.2d at 843. Menasi's attorney chose a trial strategy focused on whether the officer pulled over the correct vehicle, a reasonable strategy, and this court does not review trial strategy.

Finally, Menasi argues that his lawyer should have mentioned he was driving on a hill, should have admitted video evidence of the speed change, and should have emphasized the lack of squad car video. Menasi's attorney asked the officer if his squad car was equipped with a video system, and the officer said it was not. The officer also testified that the speed limit changed, so this is not disputed.

Menasi's arguments are matters of trial strategy, which this court does not review. Even if they are not, Menasi's arguments fail under the first prong of *Strickland* because he has not shown that his attorney's actions fell below an objective standard of

reasonableness. While the second prong need not be addressed, there is also no evidence that the outcome of this trial would have been anything besides a finding of guilt.

**Affirmed.**