*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-0653**

State of Minnesota,
Respondent,

vs.

Jeremy Jyrone White,
Appellant.

**Filed April 28, 2025**
**Affirmed**
**Bjorkman, Judge**

Ramsey County District Court
File No. 62-CR-22-6144

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Bjorkman, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges his convictions of attempted second-degree murder and first-degree assault, arguing that his constitutional right to a speedy trial was violated. And he asserts additional claims in a pro se supplemental brief. We affirm.

## FACTS

In the early morning hours of October 19, 2022, appellant Jeremy Jyrone White picked up H.B.—with whom he was romantically involved—from a friend's house in Bloomington. White and H.B. drove around the Twin Cities metro area for a few hours. At some point, White asked H.B. to turn off the location data on her cell phone and give the phone to him; H.B. complied. White and H.B. then began to argue about an unknown matter.

As they argued, White drove into a St. Paul alley, pulled out a handgun, and shot H.B. in the face. The bullet entered through H.B.'s left jaw and exited through her right cheek. H.B. jumped out of White's car and began screaming for help. White drove away, taking H.B.'s cell phone with him.

H.B. began knocking on doors of surrounding residences in search of help. Eventually, a resident called 911, reporting that she had heard a man and woman fighting followed by a gun shot, and that the woman was now screaming, crying, and banging on her front door. Officers responded and located H.B., who—despite her injury—informed them that White shot her and took her cell phone. Police were unable to apprehend White that evening but continued to investigate the incident.

Pursuant to a search warrant, police officers obtained cell-site-location information (CSLI) for both White's and H.B.'s cell phones. The officers then worked with the Federal Bureau of Investigation (FBI) to use the CSLI to analyze the movement of White's and H.B.'s phones on the night of the shooting. The results aligned with H.B.'s account of what happened.

Respondent State of Minnesota charged White with one count of attempted second-degree murder under Minn. Stat. § 609.19, subd. 1(1) (2022), and one count of first-degree assault under Minn. Stat. § 609.221, subd. 1 (2022). But White continued to evade apprehension for several weeks. On November 10, he was finally located by the Missouri State Patrol while traveling southbound through the state. When Missouri officers attempted to apprehend him, White fled, leading officers on a high-speed chase that reached 130 miles per hour. On December 22, White appeared in district court in Minnesota and demanded a speedy trial, and a pretrial hearing was scheduled for January 18, 2023.

During the January 18 hearing, White's public defender informed the district court that she was "concerned about [her] ability to rationally consult" with White and requested a Minn. R. Crim. P. 20.01 competency evaluation. The district court ordered the evaluation, noting its own observations of White and counsel's request. The court also determined that the evaluation was "good cause to continue" the trial.

On March 1, White appeared before the district court with a different public defender and was found competent to stand trial. White renewed his demand for a speedy trial, and a pretrial hearing was scheduled for later that month. At that pretrial hearing, the district court, acting sua sponte, found good cause to continue White's trial-management conference to May 25 to allow the second public defender (the public defender) time to get familiar with the case and prepare for trial.

The trial-management conference occurred as scheduled, and White's trial was set to begin five days later. But during those five intervening days, White retained private

3

counsel. On the May 30 trial date, private counsel appeared with White and the district court discharged the public defender. Private counsel moved for a continuance to allow him adequate time to prepare; White agreed to suspend his speedy-trial demand accordingly. The district court granted the motion and scheduled a trial-management conference for July 6, with trial set to begin on July 10.

On July 6, private counsel requested another continuance to accommodate personal health issues and the availability of a potential defense witness. Again, White agreed to suspend his speedy-trial demand in line with private counsel's request. The district court continued the trial, setting another trial-management conference for August 17.

At that conference, private counsel informed the district court that he had disclosed a witness and noticed the prosecution of a new alibi defense after the deadline set by the court in its pretrial order. This late disclosure prompted the state to seek a continuance to allow it to investigate the newly disclosed alibi witness's testimony. The district court granted the continuance, reasoning that—although it had "every basis" to preclude the alibi witness on procedural grounds—there was good cause to delay the trial to ensure White the most effective defense.

On September 23, the state moved to disqualify private counsel due to multiple conflicts of interest. Following a hearing, the district court granted the state's motion.

On October 2—the date the trial had been scheduled to begin—White reasserted his speedy-trial demand. The district court reappointed the public defender and scheduled a follow-up hearing for October 16. At that hearing, the public defender advised the court that White was "really concerned" about his mental health and safety while residing in jail.

4

He reported that White was taken off his antidepressant and denied other mental-health services. The district court acknowledged these concerns and asked the public defender to monitor the situation and keep the court informed.

White's five-day jury trial began on November 28. H.B. testified consistent with the facts presented above. The state presented the CSLI evidence through an FBI agent, and testimony from several police officers who were involved in the investigation and apprehension of White. White did not testify or present any evidence. The jury found White guilty as charged, and the district court sentenced him to 240 months in prison on the attempted second-degree murder offense.

White appeals.

**DECISION**

**I. White's right to a speedy trial was not violated.**

The United States and Minnesota Constitutions guarantee criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. This right protects defendants against "undue and oppressive" pretrial incarceration, minimizes the "anxiety and concern accompanying public accusation," and prevents lengthy delays that impair "the ability of the accused to defend himself." *State v. Jones*, 977 N.W.2d 177, 190 (Minn. 2022) (quotations omitted). Whether a defendant's right to a speedy trial has been violated is a constitutional question, which we review de novo. *Id.*

When assessing a speedy-trial claim, we apply the four-factor balancing test first articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999). These factors include (1) the length of delay, (2) the reason for the

5

delay, (3) the defendant's assertion of their right, and (4) any prejudice to the defendant. *Barker*, 407 U.S. at 530. No single *Barker* factor is necessary or sufficient to establish a speedy-trial violation. *State v. Mikell*, 960 N.W.2d 230, 245 (Minn. 2021). Instead, we balance the factors within the context of the case to determine whether the delay "endanger[ed] the values that the right to a speedy trial protects." *State v. Paige*, 977 N.W.2d 829, 837 (Minn. 2022) (quotation omitted).

White argues that consideration of the *Barker* factors demonstrates that his right to a speedy trial was violated. We analyze each factor in turn.

**Length of Delay**

The first *Barker* factor serves as a "triggering mechanism which determines whether further review is necessary." *Windish*, 590 N.W.2d at 315 (quotation omitted). A delay of more than 60 days after a defendant's speedy-trial demand is presumptively prejudicial. Minn. R. Crim. P. 11.09(b); *Mikell*, 960 N.W.2d at 246. If the length of a delay is presumptively prejudicial, the remaining *Barker* factors must be analyzed. *Windish*, 590 N.W.2d at 315-16. That is the situation here. White first demanded a speedy trial on December 22, 2022. His trial began on November 28, 2023—341 days later. Even accounting for the 80-day period during which White suspended his speedy-trial demand, the nearly nine-month trial delay warrants analysis of the remaining *Barker* factors.

**Reason for Delay**

The second *Barker* factor requires us to determine which party was responsible for the delay and assign weight to the delay based upon the reason for its occurrence. *Paige*, 977 N.W.2d at 838. Deliberate efforts to hamper the defense are weighed heavily against

6

the state, while state negligence and delay related to court congestion weigh less heavily. *Jones*, 977 N.W.2d at 191. When good cause exists for a delay, it is not held against the state. *Id.* And when a delay is caused by a defendant's actions or the actions of defense counsel, there is no speedy-trial violation. *Id.*

White contends that this factor is neutral because "some delay is attributable to each party." The state asserts that all delays are attributable to the defense. We agree with the state.

The first delay was occasioned by defense counsel's request for a rule 20.01 competency evaluation. White concedes that this delay is *attributable* to him but argues it should not *weigh* against him. In doing so, he urges us to apply to defense delays the principle that good-cause delays are not weighed against the state. *See id.* We decline this invitation. The state—not the defendant—bears the burden of bringing a case to trial. *Mikell*, 960 N.W.2d at 244. Accordingly, defendants are free to prioritize time-consuming pretrial matters as they wish. *Barker*, 407 U.S. at 526-28. Indeed, "[d]elay is not an uncommon defense tactic." *Id.* at 521. On this record, the delay caused by defense counsel's competency-evaluation motion weighs against White. *See State v. Hahn*, 799 N.W.2d 25, 32 (Minn. App. 2011) (providing that "[d]elays caused by defense motions generally weigh against the defendant"), *rev. denied* (Minn. Aug. 24, 2011); *see also State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005) (applying that principle to a motion for a "Rule 20 evaluation").

The second delay occurred when the district court ordered a 56-day continuance after appointing the second public defender. While the public defender did not expressly

request a continuance, they advised the district court that the discovery in the case was "on the larger side," and they had "limited time to review it." In other words, the district court's decision to continue the trial was premised on the public defender's expressed lack of preparedness for trial. This delay weighs against White.

The third delay followed the state's motion for a continuance to allow it to investigate the late-disclosed alibi witness.[1] The prosecutor explained that they were otherwise prepared for trial but were "ethically obligated" to investigate potentially exculpatory evidence. Although the state sought this continuance, its need to do so was based entirely upon the actions of private counsel. This delay weighs against White, not the state.

The final delay occurred when the state moved to disqualify private counsel due to multiple conflicts of interest. Specifically, the state had learned that (1) private counsel had agreed to represent the victim, H.B., in a separate matter; and (2) recorded jail phone calls between White and the alibi witness strongly suggested that the witness only agreed to testify because private counsel had promised to represent her in another matter. Again, while the state's motion prompted the delay, the motion was made necessary by private counsel's actions and rooted in good-cause concern for ensuring that White receive a fair trial. This delay weighs against White, not the state.

---

[1] We do not analyze the delay caused by the two continuances sought by and granted to private counsel because White affirmatively suspended his speedy-trial demand during that time.

In short, our review of the record demonstrates that actions taken by the defense were the catalyst for every delay in bringing White's case to trial. Accordingly, the reason-for-the-delay factor weighs against White.

**Assertion of the Right**

The third *Barker* factor asks whether and how the defendant asserted their right to a speedy trial. *Mikell*, 960 N.W.2d at 252. "The defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *State v. Osorio*, 891 N.W.2d 620, 629 (Minn. 2017) (quotation omitted). But in assessing whether a speedy-trial demand is "serious," we may consider accompanying actions that "undermine the ability for the trial to occur." *Paige*, 977 N.W.2d at 841 (quotation omitted).

White asserted his speedy-trial right on December 22, 2022, and reiterated it several times thereafter. But he also opted to change counsel several times, including retaining private defense counsel just five days before his trial was set to begin. On balance, this factor weighs only slightly in White's favor.

**Prejudice**

When analyzing the fourth *Barker* factor—whether the delay prejudiced the defendant—we consider three interests: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *Jones*, 977 N.W.2d at 192 (quotation omitted). Impairment of the defense is the "most serious" interest. *Id.* (quotation omitted).

White argues that his pretrial incarceration was oppressive and caused him unusually severe anxiety and concern because he was denied antidepressant medication and mental-health treatment. This argument is unavailing.

It is true that White experienced a lengthy pretrial incarceration. But, as described above, all of the trial delays were ultimately attributable to him and any resulting prejudice is therefore "ameliorated by [his] acquiescence to the delay." *Osorio*, 891 N.W.2d at 632; *see also State v. Johnson*, 498 N.W.2d 10, 16 (Minn. 1993) ("[A]lthough [a] defendant's incarceration might have been unfortunate, the fact that much of the responsibility for that situation was his own weighs against his claim."). And White has not demonstrated that the alleged denial of mental-health services was the result of trial delay. *Osorio*, 891 N.W.2d at 631 (stating that the prejudice a defendant suffers *must* be due to the delay). To the contrary, the record reflects that White links the alleged treatment denial to a preexisting conflict with jail staff that arose during a prior, unrelated period of incarceration.[2] And, most importantly, White does not even claim that the most significant indicator of prejudice—impairment of his defense—is present here. Overall, the prejudice factor weighs against White.

**Balancing**

Upon balancing all four *Barker* factors, we conclude that the nine-month trial delay did not "endanger the values that the right to a speedy trial protects." *Paige*, 977 N.W.2d at 843. Every trial delay—even those requested by the state—was occasioned by defense

---

[2] We note White first raised the treatment issue 43 days before trial commenced.

counsel's actions, and White's defense was not thereby impaired. On this record, we discern no violation of White's right to a speedy trial.

## II. White's pro se arguments do not warrant relief.

In a pro se supplemental brief, White argues that (1) the district court erred by ordering a competency evaluation, (2) he received ineffective assistance of counsel, (3) the district court abused its discretion in its evidentiary determinations, and (4) there is insufficient evidence in the record to support his convictions. We address each argument in turn.

### Rule 20.01 Competency Evaluation

Minn. R. Crim. P. 20.01, subd. 3(a), requires defense counsel to request a competency evaluation if they, "at any time before or after conviction, doubt[] the defendant's competency to proceed." A defendant is competent if they have "sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding and ha[ve] a rational as well as factual understanding of the proceedings against [them]." *Bonga v. State*, 797 N.W.2d 712, 718 (Minn. 2011) (quotation omitted). If the district court determines there is a reasonable basis to doubt the defendant's competency, it must order a competency evaluation. Minn. R. Crim. P. 20.01, subd. 3(b).

White asserts that the district court erred when it ordered a rule 20.01 competency evaluation because there was "no factual basis for [its] decision."[3] The record defeats this

---

[3] White also argues that defense counsel's rule 20.01 motion constitutes "attorney abandonment." This argument is unavailing. Defense counsel *must* make a competency motion if they have any doubt regarding a defendant's competency to stand trial. Minn. R. Crim. P. 20.01, subd. 3(a).

11

argument. As noted above, the district court's findings cite both defense counsel's expressed concerns and the court's own observations of White's behavior as the factual basis for ordering a competency evaluation. *See Bonga*, 797 N.W.2d at 720 (providing that a defendant's "irrational behavior" and demeanor are relevant to the court's determination of whether there is reason to doubt their competency). We see no error by the district court.

**Ineffective Assistance of Counsel**

To prove ineffective assistance of counsel, a defendant must demonstrate that "(1) [their] counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013) (describing the test first laid out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We presume that counsel's performance was reasonable, *id.*, and generally do not review ineffective-assistance claims that are based on trial strategy, *State v. Mosley*, 895 N.W.2d 585, 592 (Minn. 2017).

White contends that his public defender was ineffective because they (1) failed to call his alibi witness and (2) did not obtain an expert to rebut the state's CSLI evidence.[4] Because both arguments relate to trial strategy, they are not legally sufficient to satisfy the *Strickland* requirements. *See Allwine v. State*, 994 N.W.2d 528, 538 (Minn. 2023)

---

[4] Additionally, White contends that the record is inadequate and requests a remand to present evidence of defense counsel's ineffectiveness. While postconviction proceedings are generally a better forum for determining ineffective-assistance claims, when, as here, the record is sufficient to decide the claim, we may do so. *Andersen*, 830 N.W.2d at 10.

(providing that the choice of "which witnesses to call, including expert witnesses, is trial strategy").

Moreover, White has not demonstrated that any claimed ineffectiveness impacted the outcome of the trial. As described above, White's alibi witness had significant credibility issues. And the presentation of an additional expert would "merely call into question the certainty" of the state's expert's findings; it would not affirmatively prove them wrong. *Id.* at 539. This record, including the strong evidence of White's guilt, persuades us that there is not a reasonable probability that the outcome of White's trial would have been different absent defense counsel's alleged ineffectiveness.

**Evidentiary Rulings**

We review a district court's evidentiary rulings for abuse of discretion. *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). White argues that the district court abused its discretion by admitting evidence of a previous domestic incident between White and H.B. and the CSLI evidence.[5] Neither argument persuades us to reverse.

First, the record shows that the district court admitted evidence of the prior domestic incident as relationship evidence pursuant to Minn. Stat. § 634.20 (2024), which states that "[e]vidence of domestic conduct by the accused against the victim of domestic conduct . . . is admissible unless the probative value is substantially outweighed by the danger of unfair

---

[5] White also challenges the district court's admission of evidence that he led the arresting officers on a high-speed chase. Because he does not provide supporting legal authority, he has forfeited this argument. *See State v. Montano*, 956 N.W.2d 643, 650 (Minn. 2021) ("Claims in a pro se supplemental brief that are unsupported by either arguments or citation to legal authority are forfeited." (quotation omitted)).

13

prejudice, confusion of the issue, or misleading the jury." White's assertion that evidence of his prior domestic incident involving H.B. constitutes inadmissible "propensity evidence" under Minn. R. Evid. 404(b) is unpersuasive. Minnesota law clearly distinguishes evidence offered under Minn. Stat. § 634.20 and Minn. R. Evid. 404(b), and the challenged evidence falls squarely within the parameters of Minn. Stat. § 634.20. *State v. McCoy*, 682 N.W.2d 153, 159-61 (Minn. 2004) (explaining that the "history of the relationship between an accused and a [domestic-violence] victim" differs from "collateral [other-acts] evidence" (quotation omitted)); *see also State v. Bell*, 719 N.W.2d 635, 639 (Minn. 2006) (noting the "distinctions" made between rule 404(b) evidence and section 634.20 evidence).

Second, White's argument that the CSLI evidence is inadmissible because the FBI agent was not "proven to be an expert," and the evidence lacked foundational reliability, is not convincing. The sufficiency of an expert's qualifications rests within the "sound discretion" of the district court. *State v. Moore*, 458 N.W.2d 90, 96 (Minn. 1990). Here, the FBI agent testified at length regarding his training, experience, and credentials related to CSLI analysis. *See* Minn. R. Evid. 702 (providing that an expert may be qualified based upon "knowledge, skill, experience, training, or education"). We are likewise not persuaded that the district court abused its discretion with respect to foundational reliability. In *State v. Berry*, the supreme court concluded that CSLI evidence had foundational reliability because there was extensive FBI-agent testimony explaining why cell-phone companies maintain CSLI, describing how CSLI analysis works, and underscoring its reliability. 982 N.W.2d 746, 757 (Minn. 2022). This is exactly the type

of testimony that was offered here. Accordingly, we discern no abuse of discretion related to the CSLI evidence.

**Sufficiency of the Evidence**

The test we apply to evaluate the sufficiency of the evidence depends on whether the state relied on direct or circumstantial evidence at trial. *State v. Segura*, 2 N.W.3d 142, 155 (Minn. 2024). Direct evidence is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *State v. Jones*, 4 N.W.3d 495, 501 (Minn. 2024) (quotation omitted). When an "element is sufficiently proven by direct evidence alone," the direct-evidence standard governs. *Id.* at 500 (quoting *State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016)). The direct-evidence standard requires us to determine "whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *See Horst*, 880 N.W.2d at 40.

White suggests that the circumstantial-evidence standard applies to his conviction and that the evidence was insufficient to establish an "inference of guilt." We disagree. H.B.'s testimony that White assaulted her and shot her in the face is direct evidence that—by itself—establishes all the elements of the charged offenses. White's sufficiency-of-the-evidence argument fails.

In sum, we conclude that none of White's pro se arguments entitle him to relief.

**Affirmed.**

15