*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1150**

State of Minnesota,
Respondent,

vs.

Jose Miguel Reyes-Jovel,
Appellant.

**Filed March 2, 2026
Affirmed
Schmidt, Judge**

Carver County District Court
File No. 10-CR-22-524

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Kevin A. Hill, Senior Assistant County Attorney, Chaska, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Joseph McInnis, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Larson, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant Jose Reyes-Jovel challenges the postconviction court's order denying his petition for postconviction relief seeking to withdraw his guilty plea. We affirm.

**FACTS**

The procedural path leading to this appeal is a winding journey. A summary of each step is necessary to understand the legal issues presented.

### *Defense Counsel's Advice and the Subsequent Guilty Plea*

In their representation of Reyes-Jovel in defense of charges involving two counts of first-degree drug possession and one count of fleeing a peace officer, defense counsel advised Reyes-Jovel about a possible duress defense and the potential immigration consequences of pleading guilty. Counsel explained this advice in a letter:

> We understand that you would like to argue that you were coerced into doing this under legal duress. As we have explained, the argument for that defense requires a showing that you were "liable to instant death." Although there is some evidence that you were gravely concerned for your life, and therefore participated in the alleged criminal activity it would be difficult to prove the instant aspect of the defense. Thus our advice is that it would likely be in your best interest to accept the State's offer and allow us to argue for a minimum prison sentence.
>
> Also, it is important that you understand that entering if you plead guilty and/or are found guilty of controlled substance crime in the first degree you may face additional immigration consequences. If you are not a United States citizen, a plea of guilty or being found guilty for the offense with which [you] have been charged may result in deportation, exclusion from admission to this country, or denial of naturalization. Additionally, even if you are found not guilty you could still be subject to immigration consequences given the nature of the charges.

After reviewing the letter with Reyes-Jovel, defense counsel negotiated a plea deal with respondent State of Minnesota. The parties presented the signed plea petition to the district

court, in which Reyes-Jovel pleaded guilty to aiding and abetting first-degree sale of more than 17 grams of methamphetamine and the state agreed to dismiss the remaining charges.

At the plea hearing, defense counsel confirmed that Reyes-Jovel reviewed and signed the petition. The district court reviewed Reyes-Jovel's rights and inquired about his awareness of potential immigration consequences:

> THE COURT: And I know your attorney talked to you about potential immigration consequences, but I'm going to go through them with you as well. Because of this conviction, you could be deported from the United States, and I want to make sure that you understand that this Court and myself either now or at sentencing have no authority or jurisdiction to change that. . . . I will not be making any immigration decisions. And even if I wanted to, I don't have the authority to do so. Do you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: And do you still want to proceed ahead even knowing the immigration consequences?
>
> [Off the record.]
>
> THE COURT: Do you still want to proceed ahead knowing those immigration consequences?
>
> DEFENDANT: Yes, that's fine.
>
> THE COURT: Your attorney tells me that you went through a plea petition line by line, item by item. Is that correct?
>
> DEFENDANT: Yes.
>
> THE COURT: And then you signed it on the last page. Is that correct?
>
> DEFENDANT: Yes.

THE COURT: And when you signed it, are you indicating to the Court that you do understand all of your rights, the charges, and the potential consequences?

DEFENDANT: Yes.

In the plea colloquy Reyes-Jovel testified:

DEFENSE COUNSEL: Mr. Reyes-Jovel, do you understand that not only is it possible that you could be deported in this case, but that by entering a plea of guilty to a controlled substance case of this nature that it would be presumptively mandatory?

DEFENDANT: Yes.

DEFENSE COUNSEL: And do you feel that you have had enough time to speak with your attorneys about both the implications in terms of your potential sentence as well as any collateral consequences such as immigration?

DEFENDANT: Yes.

. . . .

DEFENSE COUNSEL: We also discussed possible defenses, specifically your self-defense and duress; right?

DEFENDANT: Yes.

DEFENSE COUNSEL: And we've explained those to you in great detail; right?

DEFENDANT: Yes, correct.

DEFENSE COUNSEL: And you've been able to ask questions about how those apply in your case; right?

DEFENDANT: Yes.

DEFENSE COUNSEL: Do you feel that you've had enough time to discuss possible defenses with [D.W.] and myself?

4

DEFENDANT: Yes.

DEFENSE COUNSEL: Are you asking for any more time to discuss possible defenses with [D.W.] and myself?

DEFENDANT: No, that's fine.

After the colloquy, the district court found that Reyes-Jovel "ha[d] knowledge of [his] rights, that [he] voluntarily and intelligently entered into [the] plea by [his] own free will, and that by answering everybody's questions . . . [on the record, he had] taken responsibility and established a factual basis for [his] plea." The court accepted the plea.

### *Denial of Motion to Withdraw the Guilty Plea*

Before sentencing, Reyes-Jovel moved to withdraw his plea. Reyes-Jovel argued that he pleaded guilty under duress and that he believed that the evidence may be viewed "favorably towards him." The district court held an evidentiary hearing on the motion.

At the hearing, Reyes-Jovel testified he felt pressured by his attorneys to plead guilty. But he clarified that the "pressure" he felt was from his attorneys advising him that he did not have a strong case. He also admitted that his counsel advised him that pleading guilty meant "I would probably go spend time in prison and then I would be deported." Reyes-Jovel also conceded that his attorneys made no threats to make him plead guilty and that he signed the plea petition which indicated that no one had coerced him to plead guilty.

The prosecutor called two of Reyes-Jovel's defense attorneys. The first testified that she provided legal advice to Reyes-Jovel about the likelihood of success in his case, she never threatened or coerced him to plead guilty, and that "[t]he decision to not go to trial was Mr. Reyes-Jovel's decision." The second defense attorney testified that he "never

5

told [Reyes-Jovel] that I would not represent him if the case proceeded to trial" and added that it was Reyes-Jovel's decision to plead guilty.

Following the hearing, the district court denied Reyes-Jovel's motion. The district court entered a final judgment of conviction and imposed its sentence.

### *Postconviction Proceedings and Appeal*

Reyes-Jovel appealed. We granted Reyes-Jovel's motion to stay his appeal and remand the case for postconviction proceedings. On remand, Reyes-Jovel filed a petition for postconviction relief, requesting that his conviction be vacated due to ineffective assistance of counsel. Reyes-Jovel alleged that his trial counsel "fail[ed] to investigate the defense of duress," gave him "affirmative misadvice on the burden of proof for this defense," and failed to properly advise him of the immigration consequences of his guilty plea. The postconviction court granted an evidentiary hearing on the petition.

At the hearing, Reyes-Jovel's trial counsel testified that he sent Reyes-Jovel the letter to give him advice on immigration and about a duress defense, which he testified included discussion on the requirement of the threat of instant death. The trial counsel further testified that he provided Reyes-Jovel with a standard *Padilla* advisory in the letter and that he and another attorney provided strong advice during in-person meetings on the possible collateral immigration consequences to pleading guilty. A different defense counsel testified that she "told Reyes-Jovel that if he plead guilty or were found guilty of the offense charged in this case, he will be deported."

Following the hearing, the postconviction court denied Reyes-Jovel's petition for relief. The postconviction court rejected the arguments related to Reyes-Jovel's allegations

6

of inadequate investigation and misadvice regarding a possible duress defense. The postconviction court also rebuffed Reyes-Jovel's argument that his counsel did not effectively advise him of the potential immigration consequences of his guilty plea.

We granted Reyes-Jovel's motion to lift the stay of this appeal. This appeal follows.

**DECISION**

Reyes-Jovel argues that the postconviction court abused its discretion in denying his petition because his defense counsel was ineffective when advising him prior to his guilty plea. When reviewing a postconviction court's denial of relief on a claim of ineffective assistance of counsel, we consider whether the postconviction court's factual findings are sufficiently supported in the record. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). We then "conduct a de novo review of the legal implication of those facts on the ineffective assistance claim, and either affirm the court's decision or conclude that the court abused its discretion because postconviction relief is warranted." *Id.* at 503-04.

We examine an ineffective-assistance-of-counsel claim under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a claim of ineffective assistance of counsel, a defendant must prove "(1) that his counsel's representation 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015) (quoting *Strickland*, 466 U.S. at 688, 694). "We review a district court's application of the *Strickland* test de novo because it involves a mixed question of law and fact." *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017).

Reyes-Jovel argues that he received ineffective assistance of counsel because his defense attorneys (1) inadequately advised him about the potential immigration consequences of his guilty plea, and (2) improperly advised him on a possible duress defense. We address each argument in turn.

**A.** **The postconviction court did not abuse its discretion in determining that Reyes-Jovel received effective assistance of counsel as to the immigration consequences of his guilty plea.**

Reyes-Jovel immigration-consequences argument relies upon the *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the United States Supreme Court held that an attorney must accurately inform a client that has been charged with a crime and is not a United States citizen of the immigration consequences of pleading guilty. 559 U.S. at 369. Failing to do so satisfies the first *Strickland* prong. *Id.* at 371 (quotation omitted).

To satisfy the first prong of the *Strickland* analysis, Reyes-Jovel needed to establish that his counsel failed to advise him of the immigration consequences for pleading guilty to aiding and abetting first-degree sale of more than 17 grams of methamphetamine. *See Nissalke*, 861 N.W.2d at 94. He next needed to establish that there was a reasonable probability that if he had been adequately advised, he would not have pleaded guilty. *Id.*

The postconviction court concluded that Reyes-Jovel's petition failed on the first *Strickland* prong. The postconviction court rejected Reyes-Jovel's argument on this issue, finding that Reyes-Jovel "was not credible" in claiming that he was not advised of the possible immigration consequences if he pleaded guilty. The postconviction court also found that "the record and counsel's credible testimony shows" that defense counsel adequately advised Reyes-Jovel of likely immigration consequences.

8

"The postconviction court is in the best position to evaluate witness credibility." *Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013). As such, we must defer to the postconviction court's credibility determinations. *Id.* And the record supports the postconviction court's determination that Reyes-Jovel was not credible.

Reyes-Jovel's attorneys first included the *Padilla* warning in their standard letter. They then provided stronger warnings when discussing the case with him. One attorney testified that she told Reyes-Jovel that "if he plead[ed] guilty or were found guilty of the offense charged in this case, he will be deported" and that "the nature of his charges were extremely likely to make him deported in this case."

At the plea hearing, the plea petition presented to the district court clearly explained the possible immigration consequences. Reyes-Jovel agreed at the hearing that his defense counsel went through the petition line-by-line with him and specifically covered the immigration consequences portion of the petition. Reyes-Jovel agreed that, if convicted, he would be subject to a presumptive deportation proceeding.

The record supports the postconviction court's finding that Reyes-Jovel lacked credibility in asserting that he was not adequately advised of the possible immigration consequences of his guilty plea. The postconviction court, therefore, acted within its discretion in denying Reyes-Jovel's postconviction petition on this ground.[1]

---

[1] Since the ineffective assistance of counsel argument fails on the first *Strickland* prong, we need not address the second. *See Mosley*, 895 N.W.2d at 591.

**B.** **The postconviction court did not abuse its discretion when it determined that Reyes-Jovel received effective assistance of counsel as to the merits of a potential duress defense.**

Reyes-Jovel argues that his counsel was ineffective when his attorneys advised him that a duress defense would not likely succeed at trial. His argument fails because the record supports the postconviction court's finding that defense counsel made strategic choices after investigating the law and facts. *See Swaney v. State*, 882 N.W.2d 207, 217-218 (Minn. 2016) (stating that "a failure to investigate a potential defense may constitute ineffective assistance if it results not from counsel's considered choice but rather from inattention or neglect," but that "[s]trategic choices made by an attorney after a thorough investigation of the facts and law are virtually unchallengeable" (quotation omitted)).

Here, the record shows that defense counsel consulted with Reyes-Jovel about the available evidence and discussed the merits of a possible duress defense with him. Then, with Reyes-Jovel's permission, counsel negotiated a plea deal with the state. The record further shows that Reyes-Jovel agreed that he discussed the duress defense with his attorneys and that he did not need more time to discuss his case before pleading guilty.

The record reveals that counsel made a reasonable investigation into the law and facts and made strategic choices. We "generally will not review strategic choices counsel made following a reasonable investigation of law and facts, and [Reyes-Jovel] has given us no compelling reason to depart from that general rule." *Id.* at 220 n.9. The

postconviction court acted within its discretion in denying Reyes-Jovel's postconviction

petition on the first *Strickland* prong.[2]

**Affirmed.**

---

[2] Because Reyes-Jovel's argument fails to satisfy the first *Strickland* prong, we need not address the second prong. *Mosley*, 895 N.W.2d at 591.

11